Once again, may it please the Court, my name is Mark Caldwell. I'm representing Ms. Contreras this morning in this Social Security matter. I will keep track of my own time. I would like to try to reserve a little bit of time for rebuttal, perhaps five or some minutes. This is a case that also involves accredited as true rule. Obviously all three cases that I have this morning do so. And as in the case I just argued, we also have irrelevant arguments from the government that there is, whether there's discretion of the court to remand for benefits or for further proceedings, and yes there is. And should cases be remanded on non-statutory considerations, and no they shouldn't. Only claimants who are in fact disabled should have their cases remanded. So again, we can get rid of those issues, and the issue again is whether this case should be remanded based upon the accredited as true rule. This case is a little bit different in that in the prior case, the administrative law judge said on the record that if I accept this evidence, that results in a finding that this person is disabled. In this case, we have vocational expert testimony that based upon the treating psychiatrist assessment from Dr. Abiyankar, no sustained work could be performed. And Dr. Abiyankar treated the claimant from February 2007 onward. And here the district court was very, very strong in what it had to say. It said that the ALJ made up a conflict that doesn't exist. The ALJ said that there was a conflict with what the nurse practitioner, the psychiatric nurse practitioner had to say. And the district court said that was a mischaracterization of what occurred. And the district court flat out said that Ms. Finney's comments, they weren't even an assessment, did not necessarily contradict Dr. Abiyankar's work-related assessment. And then the mistake the district court made, respectfully, was it said we need to resolve this, we need to remand this matter to resolve the conflict that the court had just said doesn't exist. Ms. Finney had two very brief comments from two treatment notes. One was in March of 08 and one was in May of 08 at ER 646 and 643. And she said that Ms. Contreras was, quote, doing well. And the other one was she was stable on psychiatric medications. That is not an assessment of work-related capacity. That's merely an assessment in a treatment setting as to how the person is doing, which is very, very important when you're talking about mental impairments, because, as we all know, mental impairments can wax and wane and vary in severity. Stable, even doing well, just means the person isn't deteriorating, the person isn't decompensating. And the district court recognized that. But the district court simply misread its own opinion when it then said there's a conflict that has to be resolved. The district court also said that the non-examining psychologist, Dr. Drozinsky, was not evidence to overcome the opinion of the treating psychiatrist, Dr. Abiyankar. So, and there was also some discussion of what they call these GAF scores, Global Assessment of Functioning. I want to point out my Rule 28J letter. The American Psychiatric Association has abandoned that rating system as lacking in clarity and not being supported by what they call psychometrics. So here it is the very decision of the district court that indicates that there is no conflict in the record that needs to be resolved, and this matter should be remanded for determination of benefits. The district court also made a mistake when it said, well, there's a conflict because the vocational expert said that Ms. Contreras could perform unskilled, sedentary work. Well, that is what the vocational expert said. But the vocational expert was explicitly responding to a question from the ALJ that was based upon, number one, Dr. Drozinsky's opinion, which the district court already determined was insufficient, and, number two, Dr. Gerber's opinion. He's another non-examining doctor, but he was merely giving an opinion as to Ms. Contreras's physical condition, and obviously we're not appealing based upon the physical condition. So once again, we have an illusory conflict in the evidence. There is simply nothing that indicates that there is a conflict that needs to be resolved. I'm probably repeating myself when I say this is sort of an illustrative of the Lester and Connick cases. But it gets even worse here, because the district court sort of went out of its way and said, not only did the ALJ not give sufficient reasons for rejecting the treating psychiatrist's opinion, the ALJ affirmatively misrepresented the record in an effort to do so. The ALJ said Ms. Contreras wants to get — doesn't want — wants to get on disability so that she doesn't have to work. Well, that isn't what the record reflected. The record reflected Ms. Contreras needed to be on disability as she could not work, meaning because she could not work. So that is simply a twisting of what the record said when the ALJ was characterizing the treating psychiatrist's opinion. Now, we also have the report of a one-time consulting psychologist, Dr. Geary. Once again, the vocational expert said if that evidence is accepted, no work can be performed. That's at ER 778. The administrative law judge did not reject that opinion, just recognized it and moved on. If he didn't even recognize it as the import for which it had, namely the vocational expert's testimony, that no work could be performed, that is also not a basis for further proceedings. And I have two cases I would like to cite, Smolen, S-M-O-L-E-N, and Lingenfelter, L-I-N-G-E-N-F-E-L-T-E-R. Both of those are cases where the agency ignored evidence. And this Court didn't say, well, then we have to have a remand so that the ALJ can take another look at that evidence. No. In both of those cases, this Court said by ignoring the evidence, the ALJ effectively rejected it. And based upon the crediting as true rule, once that evidence is accepted, since there are no other issues that must be resolved, remand for award of benefits is the appropriate response. And so in both of those cases, this Court remanded for award of benefits. The other issue that could be talked about in this case, that doesn't need to be talked about once the issues that I've just discussed are resolved in Ms. Contreras's favor, are the claimant's credibility. And here the ALJ really, you know, said her testimony wasn't credible. And, you know, when you look at the record in this case, you have to say what testimony? She barely got a few words out of her mouth before the ALJ said, I don't believe what you're saying. Based upon my personal experience, I just know that you used to be a drug addict and you must still be using. Because why? Because, well, my experience tells me that must be true. On the subsequent hearing, the ALJ's own expert witness said it wasn't true. That by that time, Ms. Contreras had already been told she was a liar. And so certainly it would be fruitless to go back before an administrative law judge who has already expressed his own opinion based upon his own experience, but not upon any evidence in the file, that Ms. Contreras was not telling the truth. So in this case, based upon the treating physician's opinion, Dr. Abiyankar, uncontradicted by the treating nurse practitioner's notes, Ms. Finney, and uncontradicted by the examining psychologist's report, Dr. Geary. What do you think the district court had in mind when it remanded for further proceedings? It had in mind a resolution of conflicts that don't exist, that by the terms of the district court's own order don't exist. The district court just flat made a mistake. It just thought that there was a conflict in the evidence when the district court itself had said there is no conflict. And it's kind of sad that I have to be here for just that reason, and I certainly mean no disrespect to the district court. Everybody makes mistakes. But it's the terms of the district court's own order that tells us there is no reason to remand this matter for further proceedings. May I reserve the remainder of my time? Pardon me? May I reserve the remainder of my time? Yes. Thank you. May it please the Court. I'm Dan Burrows. I'm a special assistant U.S. attorney for the District of Arizona. I'm defending the Commissioner's decision in this case. Well, not the decision itself. I'm defending the lower court's decision, and that's where I think we need to be clear. If I may build off the argument that came before. At this point, the agency is not defending the ALJ's decision. This case is only about, solely about, the question of remedy, i.e., is the complaint entitled to a new hearing, or is the claimant entitled to just simply have benefits paid by the court? So on that level, what you are reviewing is the district court's decision. It's an abuse of discretion standard. This was the court's case law states. And so you're not, I won't be up here trying to defend what the ALJ did. We didn't cross-appeal that issue. It's not really in front of the court anymore. But I should be clear that what this court reviews, and the Supreme Court case law is very clear, are judgments, not opinions. And so while my opponent has focused on the reasons that the district court gave for determining there was a remand, those are not the only good reasons that are out there for remanding this case. In the existence of those reasons, the commissioner is entitled to argue for affirmance of the district court's decision, the decision to remand for further proceedings, on any grounds that can support that decision, regardless of whether the district court mentioned it or not. So with that in mind, I think there are two reasons, even if we apply credit as true. So you don't even have to get into the validity of credit as true. There are two reasons why further proceedings are needed in this case before it can be determined whether the claimant is disabled or not. And therefore, the decision to remand was not an abuse of discretion. The first reason is that although there is some vocational expert testimony related to this point, as pointed out by Mr. Caldwell, that testimony doesn't really answer the question. A vocational expert's testimony is only relevant insofar as it is in response to a question about a hypothetical residual functional capacity. But opinions about moderate limitations, mild limitations, et cetera, et cetera, are not a residual functional capacity finding. This Court's ‑‑ So you are asking us to consider the validity of the ALJ's decision, whether you ‑‑ In order to reach your position as we look at the district court decision, let's assume, for instance, that you are not correct and the vocational expert said yes, crediting her testimony as true, she's entitled to benefits. Well, I mean, if we assume that the vocational expert's testimony is probative on that point, which I would say it's not, but if we assume that, there's still an additional issue. And that's the issue of drug use. Now, a person cannot be found disabled if drug or alcohol abuse is a contributing material factor to their disability. Now, my opponent was up here and said, well, there's absolutely no evidence of drug use. That's not true. In fact, the claimant herself admitted to Dr. Geary, one of the doctors who examined her, one of the opinions that my opponent is seeking to credit, that she had used cocaine and crystal meth in the past. There is evidence of drug use. So even the way that the social security disability adjudication system works is that when there's evidence of drug use, you come to an initial conclusion about disability, including the effects of whatever drug use there is. You come to that initial conclusion. You should be attacking the ALJ's decision for not properly applying the statute regarding drug use. Well, that's not true, because if you'll let me explain, first you have to come to an initial decision regarding disability, including the effects of drug use. If that decision is no disability, the decision is no disability. If the decision is disability, then there's a second question. And that second question is, removing the effects of the drug use, would the person remain disabled? And that's a question that has not been addressed in this case, simply because it didn't come up, yet the ALJ didn't find disability in this case. The ALJ hadn't planned on having other hearings. The ALJ completed his work, he thought. So I ask you again, are you not then attacking the ALJ's decision? Well, I don't know if I'm attacking the ALJ's decision. I'm certainly not defending it. All right. So you're willing to accept the ALJ's decision? No, I accept that the decision is an error. We did not appeal the district court's ruling on that. I mean, the ALJ's decision is at this point we're not defending it. The district court pointed out several errors in the ALJ's decision. We're happy to let that ruling stand that there were errors in the decision. This appeal, because we did not cross-appeal it, is only about the remedy, only about the remedy. I mean, ordinarily the remedy would be different on the grounds you complain about regarding the ALJ's decision than it would be on the grounds that your opponent complains about. You're complaining that the ALJ didn't proceed and decide the drug issue. Well, it's not necessarily a complaint. It's that it was not raised by decision as it stood. So, I mean, if there's a six-step process, if there's a six-step process, and you can answer the question in step three, there's no reason to answer four, five, six. So the ALJ, at least from a logical perspective, was there's no reason to talk about the drug use if you never get to that point anyway. But I think my larger point, and I can cite Supreme Court case law for this, but the commissioner can argue for affirmance on any grounds, even if it's not what the lower court used. I mean, Latul v. Schofield, 308 U.S. 415. Commissioner v. Gowron, 302 U.S. 238. There's another quote that sticks in my head that an appellate court reviews judgments, not decisions. I'm sorry I don't have a cite for that, but that's another Supreme Court one. I'm arguing for affirmance of the district court decision. The decision to remand. I'm arguing for that on a different rationale than what the district court used. But I'm not arguing to support the ALJ's decision. The ALJ's decision is erroneous, and, in fact, if you look at Stubbs-Danielson, it's erroneous for other reasons that the district court didn't even point out, namely that the RFC decision is not an accurate RFC decision. I don't understand your judgment argument. If the district court were to remand and say all the agency should do is calculate the benefits, would you say that that judgment can't be, we can't look at the reasons, we can just say, okay, affirmed? Well, if the agency – I mean, the only person who would be in a position to appeal that would be the agency. I mean, the only party that would be in a position to appeal that. So if the agency appealed that, certainly the agency would be arguing that paying benefits was not appropriate, but that's not the situation that we have here. No, we can only look at the judgment, and if we agree that a remand is appropriate, it doesn't matter what the reasons are. Is that your position? That's absolutely correct, Your Honor. Okay. So then if we said a remand is proper, and there's a dispute as to what the agency can do on remand, we can't resolve that? Well, no, you're free to resolve that, but I think that's a different issue. I mean, setting aside remand for calculation of benefits, you're talking about remand for further proceedings and then what proceedings might be required. I think this Court's case law is mixed on that question, and I think Conant points this out very well. I mean, some courts, and you can talk about Hammock, I think, or I think it was, anyway, Varney for sure, orders the agency to credit certain evidence as true and then proceed from there on. Other cases don't order the agency to credit anything that's true at all. So it's a little unclear how, even if we apply credit as true, it's supposed to apply in a particular situation. I mean, the agency would argue that ordering the agency to credit something as true on the back end, it requires an ALJ to violate both the statute and the regulations. I mean, you can conceive of credit as true. So you're attacking the credit as true? Well, you can – I don't know if I attack it because it's not really clear what the rule is as part of the problem. You can conceive of credit as true in two ways. One, as a decisional mechanism for the Court. We say if we credit this as true, does this lead to the payment of benefits? If so, we pay benefits. If not, we send it back to the agency for full review from step one. But you could also conceive it as some sort of continuing – as having some continuing application against the agency, even on remand, and some courts have done that, Varney. But that requires the ALJ to violate the statute, to violate the regulations that require him to view the record as a whole. You're saying you're not attacking the rule, but the rule violates the law. Well, certain applications of the rule violate the law. But if I can step back, you can decide this case without determining the validity of that. On the drug and alcohol issue, also on the issue that the vocational expert's testimony is not probative of disability in this case. I think there's also – if we go back and question, like, whether it was an abuse of discretion for the district court to remand this case, and if you look at cases that have been mentioned in the previous argument, but cases like McAllister, Monin, Salvador, then you can look at reasons that the ALJ didn't give. Now, my opponent is brief, mentions Chenery, says these are all post hoc rationalizations. But post hoc is not something that you can just wave around and say if the ALJ didn't mention it, you're not doing it. And if you look at Chenery, and Chenery 2, because there's two cases on the Supreme Court handled in that set of facts, but the second decision makes very clear that the first decision, where all these prohibitions against post hoc come from, is about upholding the agency's decision in the first place. You cannot decide to uphold the agency's decision for a reason that the agency didn't give. But at this point, in this case, we're past that. We're no longer arguing to uphold the agency's decision. Now we're questioning what the proper remedy is. And in that case, this court's law, I mean, McAllister and Salvador are both published cases, and then Monin as well. It's an unpublished case, but it's more recent, are very clear that. When you say we're not arguing now about the ALJ decision, the only question is what the remedy is. But what the remedy is depends on what's wrong with the ALJ decision, doesn't it? It does, in some sense, in that we're saying, well, the evidence that the credit is true rule would credit, if we apply it, is dependent upon what the ALJ did. Right. I think what that evidence is is already established at this point. I mean, we can argue about whether credit is true is valid at all, but I think it would take an en banc court to decide that. But if we assume credit is true is valid, it's pretty clear what evidence we have to credit. Now, there are other issues. I mean, the Geary and the Abiancar opinions are in conflict with each other, and it's impossible for them both to be true if one is far more restrictive than the other one. So that's an issue that needs to be sorted out by a fact finder at some point as well. It's a little unclear how credit is true decides that particular conflict. You're right, Your Honor, that the question of what evidence we're talking about has been decided by the ALJ's decision. But, again, we're not contesting what evidence we're talking about. I see I've just got about a minute and a half left. I do want to hit on this credit is true is discretionary issue very quickly. And this is in my opponent's brief, but also in the previous argument.  I'm sure you've seen that. But his interpretation of this discretionary issue is simply incorrect. One, it violates Varney. I mean, Varney very clearly says that there are at least two of the judges, and perhaps the concurring judge, though it's a little unclear, are very clear that there is a split in authority. Now, they disagreed on whether that particular case brought that split into clear distinction, but two of them at least agreed that there was a split on whether it is discretionary or whether it is compulsory. Also, his interpretation of where the discretion lies can't possibly be right. I mean, if we look at the three steps, whether that he says it lies on the front end, whether the evidence was improperly discredited, whether any further issues, whether the evidence clearly shows disability, those are all yes or no issues of law. If there is any discretion anywhere, it cannot possibly be there. Whether the evidence was improperly discredited relies on did he give legally sufficient answers? Did he give evidence that met the standard of review? Those are questions of factual and legal sufficiency that are clearly questions of law. If there is discretion, it can't be there. Also, whether there's any further issues, that's a question, yes or no, factual issue. Are there further issues to be determined? There can't be any discretion in determining that. Whether the evidence clearly shows disability, that's a question of whether they meet a statutory legal standard. Again, there can't be any discretion there, and I'm out of time. Well, just a minute, sir. Where is the discretion? The discretion is on whether to apply the rule in the first place. I think the facts that there are numerous cases that find an inadequate ALJ opinion and remand A, either without mentioning credit is true or not applying it at all or saying we have some flexibility, clearly indicates that there is some discretion whether to apply it or not. And these are all cases that came after Varney and came after him. The court said, yes, mandatory is a rule, but there's got to be some flexibility. I guess what happens after that is the court fleshes out the cases in which there is some flexibility. When the court said, and I think maybe it was Connick, it was Judge Wallace, I don't know, wrote the opinion and said, Well, yeah, but we have some flexibility. Have we fleshed out when we have some flexibility since then? Well, not since Connick, but I think Connick was declaring a pre-established fact, not setting a rule of law going forward. And so it does cite numerous cases beforehand. Right. What is the rule? When do we have some flexibility? Well, I think there are a few factors to take into account, some of which have been mentioned already, i.e., whether there is other evidence that the ALJ could point to. I mean, we can't assume that the answers that the ALJ gave are not necessarily the only answers he could have given. You have an ALJ that's writing 700 opinions a year and is trying to pump these out as quickly and efficiently as possible. He's not going to mention every single piece of evidence. The other issue — Well, and you're really saying that our rule that we only review the ALJ, what he did, isn't really right, because he writes so many opinions that he's not going to get them right, he's not going to get everything. So then when we reverse him, we should go back and have somebody else say, Well, could he have made other arguments that he failed to make? I don't know if I would agree with the first part of what you're saying, but certainly the second part. The first part, I would say, you still are ordinarily in an ordinary case where it's not just a remedy appeal, reviewing the ALJ's decision based on what's in the confines of the ALJ's decision. But that's, as I mentioned before, and as Chenery, too, makes clear, that's simply a case about can we uphold this decision. On the back end, we've already decided we can uphold this decision. Now what do we do about it? That's where you can consider other reasons that the ALJ gave. But that whole approach bothers me because it violates the Chenery rule, which is basic that you have to judge and administrate determination only by what is expressly expressed as a basis for the decision. Your Honor, I'm trying to say this is different than the Chenery rule.  Is it? The first part, whether to uphold the decision, it does not apply to the remedy part. Chenery 2, and I can give you the slide for that, that's 332 U.S. 194. That makes very clear that Chenery 1, the one that announced that rule, was concerned with the grounds on which you can uphold a decision, not on what you do once you've decided to overturn the decision. Thank you. Your Honor, in absence of other questions, my rebuttal is really fact-based. The case you're trying to remember with Judge Wallace was con it. I looked it up while you were speaking, so just to help you with that. And I hate to help my other – I hate to help the other side, but Mr. Burroughs misspoke. He was talking about the Varney case when he meant to say the Vasquez case. And that's just so you don't get confused about what he's saying. I'm not responding to his argument. I'm just correcting the mistake that he made in terms of the site. I do, however, want to go to the record. I know I'm not supposed to read to the Court, but the commissioner has said there's an issue about drug use. So here's what the agency's own expert witness had to say at ER 772. The last note I have on the file is in 06. So we're talking about April of 06. And she was described as having her substance abuse was basically at that point no longer an issue. That's what the agency's expert had to say. Unless the commissioner wants to say the agency's own expert was wrong, then that's not an issue. The other statement was that there was confusion about the vocational expert's testimony in terms of what he was responding to. And here again at ER 777, my colleague, Mr. Peckis, was cross-examining the vocational expert and asked the vocational expert to assume what Dr. Geary had to say. And I'm not going to go through the whole question because it outlines all the various things. But it ends by saying, Would you agree that the cumulative effect of these limitations would preclude all work on a sustained basis? The answer, yes. Next question. Dr. Abiyankar's assessment. Question. Again, he outlines all the limitations. Question. Again, would you agree that the cumulative effect of these particular moderate limitations would preclude work on a sustained basis? Answer. I believe so, yes. I just made a mistake. I flipped. The first one was Dr. Abiyankar. The second one was Geary. But the point is, on both of those pieces of evidence, the vocational expert said, That precludes work. I don't understand how I could have misrepresented what the record was in that respect. I just read it to you. With that, I have no further questions unless there are no further statements, unless there are questions from the Court. Thank you for your attention. Thank you very much. The case is currently being submitted.
judges: Farris, Reinhardt, Tashima